IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAO-MSO RECOVERY II, LLC, a Delaware entity;    Case No. 17-cv-01340
MSP RECOVERY, LLC, a Florida entity; MSPA
CLAIMS 1, LLC, a Florida entity,

   Plaintiffs,

vs.

ALLSTATE INSURANCE COMPANY, an Illinois
Corporation, ESURANCE PROPERTY AND
CASUALTY INSURANCE COMPANY, a
Wisconsin Corporation,

   Defendants.
_____/

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**BACKGROUND**

The Complaint alleges that Plaintiffs are assignees of unnamed Medicare Advantage Organizations ("MAOs"), who seek to enforce the rights of numerous other MAOs and similar entities and/or their assignees in a nationwide putative class. (Compl., ¶¶ 4-7, 53.) Plaintiffs allege Defendants offer automobile insurance policies that contain no-fault and medical payments coverage for automobile accident-related medical expenses. (*Id.*, ¶ 3.) According to Plaintiffs, Defendants, as primary payers, failed to fulfill their statutorily-mandated duty under the Medicare Secondary Payer provisions of the Medicare Act to reimburse MAOs for medical expenses arising out of automobile accidents. (*Id.*, ¶¶ 1-2.) Plaintiffs seek "reimbursement of those accident-related medical expenses paid for by the Plaintiffs' assignors and all other MAOs that should have been paid, in the first instance by Defendants under the Medicare Secondary Payer provisions." (*Id.*, ¶ 6.)

Plaintiffs assert two causes of action: Count I "Private Cause of Action for Double Damages under 42 U.S.C. §1395y(b)((3)(A)"; Count II "Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract." (Compl., pp. 14-17.) Plaintiffs seek to represent the following putative class:

> Entities that contracted directly with the Centers for Medicare and Medicaid Services ("CMS") and/or their assignees pursuant to Medicare Part C, including but not limited to, MAOs and other similar entities, to provide Medicare benefits through a Medicare Advantage Plan to Medicare beneficiaries for medical services, treatment, drugs, and/or supplies ("Medicare Services"), as required and regulated by HHS and/or CMS, as a direct payer of Medicare Services on behalf of Medicare beneficiaries either for parts A, B and/or D, all of which pertain to the same Medicare Services that are the primary obligation of the Defendants; and
>
> That have made payment(s) for Medicare Services, whereby, the MAO or its assignee, as a secondary payer, has the right and

> responsibility to obtain reimbursement for such Medicare Services. Defendants are the primary payers pursuant to no-fault laws, as well as Defendants' no-fault and/or medical payments insurance policies throughout the United States and its territories, and are financially responsible to Medicare beneficiaries for the medical expenses covered pursuant to automobile insurance policies;
>
> Where the Defendants failed to properly pay the medical bills on behalf of their insureds and have otherwise failed to reimburse, including but not limited to, the MAOs or their assignees.

(*Id.*, ¶ 53.)

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED UNDER *TWOMBLY* AND *IQBAL*.

To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation and internal quotation omitted). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) (quoting *Twombly,* 550 U.S. at 555).

Here, the Complaint is devoid of any facts whatsoever identifying what is at issue. Plaintiffs fail to identify even a single instance where Defendants failed to pay an MAO or assignee what they supposedly owed. Plaintiffs attach as Exhibit A to their Complaint a sheet they claim "refers to representative claims of the Plaintiffs." (Compl., ¶ 52.) Plaintiffs thus admit, by way of Exhibit A, that they must plead such legally sufficient facts to support their claims. However, Exhibit A consists only of a few generalized, wholly conclusory paragraphs stating that: (1) numerous unnamed Medicare beneficiaries were insureds of Defendants and members of unnamed MAOs, who allegedly assigned rights to Plaintiffs; and (2) the unnamed

beneficiaries were involved in automobile accidents in the United States, required medical treatment, and Defendants failed to pay for the bills or reimburse the beneficiaries' MAOs. (Compl., Exhibit A.) Plaintiffs state in a footnote that, due to privacy concerns, they will provide names of the beneficiaries and their MAOs and/or assignees upon execution of a protective order. But the offer to provide beneficiary/MAO names does not change the fact that there are no non-conclusory allegations in the Complaint to support the existence of any rights related to any particular unpaid amount at issue here. These are precisely the type of "threadbare" allegations that cannot survive dismissal under *Twombly* and *Iqbal.*

Plaintiffs' pleading deficiency is underscored by the fact that they are attempting to plead their claims on a class-wide basis. Plaintiffs' Complaint allegations would be deficient even if their Complaint involved a *single* disputed transaction in connection with just *one* insurance policy issued by Defendants. Plaintiffs do not identify, even in connection with just one transaction, the date of the medical services at issue, the enrollee (even in redacted form), the date of the enrollee's accident, the provider of the services, or any fact at all related to any particular claim. What bills did Defendants allegedly fail to pay? Were the bills related to an automobile accident for which coverage potentially existed under a policy issued by Defendants? Were the bills reasonable and for treatment that was necessary, as required for no fault/Med Pay coverage to apply? Plaintiffs' Exhibit A further exacerbates Plaintiffs' pleading shortcomings. It is not simply a bald allegation as to just one claim, which in itself would be insufficient; it lumps together vague allegations, presumably related to thousands, if not more, of transactions at issue for the putative class, without identifying one single fact pertaining to one single claim.

Moreover, the Medicare Secondary Payer Act ("MSP Act") states that, as a secondary plan, an MAO should not pay unless the primary plan *cannot reasonably be expected to make*

payment promptly or because the intermediary or carrier did not know that the other coverage existed. *See* 42 U.S.C. 1395y(b)(2)(B)(i) ("Secretary may make payment under this subchapter with respect to an item or service if a primary plan . . . has not made or cannot reasonably be expected to make payment with respect to such item or service promptly."); 42 C.F.R. § 411.21 ("Conditional payment means a Medicare payment for services for which another payer is responsible, made either on the bases set forth in subparts C through H of this part, or because the intermediary or carrier did not know that the other coverage existed."). Medical providers are required to identify and bill primary payers and must have reason to believe payment will not be made promptly before they can even bill a secondary payer. *See, e.g.*, CMS Medicare Secondary Payer Manual Publication 100-05, Ch. 3 at 30.2.1, *https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/msp105c03.pdf*. In addition, MAOs are required to attempt to identify primary payers. *See, e.g.,* 42 C.F.R. § 108. However, the Complaint is devoid of any facts regarding what efforts Plaintiffs or their assignors made to identify primary payers; whether Plaintiffs or their assignors were aware of a primary payer's existence at the time they supposedly processed the charges; whether and why payment was not reasonably expected to be made by Defendants prior to any payment by Plaintiffs or their assignors; why Plaintiffs were even required to make payment, or whether they had any reasonable basis to conclude Defendants knew about the bills but could not reasonably be expected to make payment. There are simply no facts establishing Plaintiffs' ability to invoke a right to reimbursement of a conditional payment under the MSP Act.

In addition, under various states' laws, including Illinois, in order to receive funds arguably due another, the plaintiff must have some form of assignment vesting such a right in

that plaintiff.[1] Here, the Complaint is devoid of any facts regarding any specific assignment from any particular MAO in connection with any particular Medicare beneficiary that was supposedly an insured of Defendants, let alone facts related to any particular medical bills Defendants supposedly failed to pay. What exactly was assigned? From whom and to whom was the assignment made? What rights did the alleged assignor have to assign? When was the assignment made? The Complaint's silence about such basic "assignment" facts falls far short of meeting the pleading requirements under *Twombly*. Plaintiff's Exhibit A only further underscores this pleading flaw because it merely sets forth, in contravention of *Twombly*, a few paragraphs referring to unnamed "Medicare beneficiaries," unidentified automobile accidents and supposedly incurred medical bills, with no dates of accidents or medical treatment, no names, no information about any particular MAO, assignee or medical provider, and no amounts of any particular unpaid medical expense or any other details whatsoever.

## II. PLAINTIFFS' BREACH OF CONTRACT CLAIM ALSO FAILS BASED ON THE LACK OF ANY ALLEGATIONS REGARDING A VALID ASSIGNMENT.

Count II, alleging breach of contract, fails under *Twombly* and *Iqbal* for another reason. Wholly apart from the deficiencies in Plaintiffs' Medicare allegations, the Complaint also fails to

---

[1] *See, e.g.*, *Clarin Corp. v. Massachusetts Gen. Life Ins. Co.,* 44 F.3d 471, 476 (7th Cir. 1994); *Hartford Ins. Co. of Se. v. St. Mary's Hosp., Inc.*, 771 So. 2d 1210, 1212 (Fla. 4th DCA 2000) (provider lacked standing to bring suit against insurer absent showing that insured assigned his right to PIP benefits to insurer); *Parkway Ins. Co. v. New Jersey Neck & Back*, 330 N.J. Super. 172, 186, 748 A.2d 1221, 1229 (Law. Div. 1998), *as revised* (Oct. 14, 1998) (same principle); *NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, 979 F. Supp. 2d 513, 523 (D.N.J. 2013) (where providers sued under ERISA plans, dismissing claims because "the complaint alleges no more than that 'the Patients provided assignments of benefits to the Plaintiffs.' That conclusory allegation . . . falls short of what is required to withstand a motion to dismiss."); *Inter Impex S.A.E. v. Comtrade Corp*., No. 00 CIV. 0133(GBD), 2004 WL 2793213, *3 (S.D.N.Y. Dec. 6, 2004) ("plaintiff Inter Impex and cross-claimant Comtrade rely solely on Inter Impex's sole allegation that 'the letter of credit was assigned to the Defendants Berkshire

allege any facts demonstrating an assignment of rights under any insurance policy issued by Defendants.

Plaintiffs allege they are entitled, pursuant to a no-fault or Med Pay insurance policy supposedly covering enrollees insured by Plaintiffs' MAO assignors, to recover insurance benefits from Defendants which Defendants allegedly failed to pay. (Compl., ¶¶ 75-80.) Plaintiffs fail to allege, however, that any policyholder/insured assigned any rights to Plaintiffs under any insurance policy issued by Defendants. Absent any allegation of a valid assignment of rights under such a policy, Plaintiffs' "breach of contract" claim fails as a matter of law. As the *Clarin* Court explained, an assignment occurs where there is a transfer of some identifiable interest from an assignor to an assignee, and a valid assignment must evidence the purpose to transfer ownership of the subject matter of the assignment as well as describe the subject matter of the assignment with sufficient particularity to render it capable of identification. 44 F.3d at 476.

Similarly, in *State Farm Mut. Auto. Ins. Co. v. Pressley*, 28 So. 3d 105, 108-09 (Fla. 1st DCA 2010), the court held "an entity other than a medical provider may recover PIP benefits for services provided by a provider, *but only pursuant to a valid assignment of benefits*. . . . Unlike [in other] cases, in which the party seeking payment of PIP benefits was acting on behalf of the medical provider under an authorized assignment of benefits, there is no evidence in this case of any assignment of PIP benefits." *Id.* (emphasis added, citations omitted).[2] Here, the Complaint

---

and Agri–Mark for the Shipment.' . . . This claim, however, is bald, conclusory and unsupported by any factual allegations of a specific assignment agreement.").

[2] *See also Parkway,* 330 N.J. Super. at 186, 748 A.2d at 1229 (providers lacked standing to pursue claims for PIP benefits absent a valid assignment from the policyholder); *T & G Med. Supplies, Inc. v. Nat'l Grange Mut. Ins. Co.,* 9 Misc. 3d 767, 770, 800 N.Y.S.2d 835, 837 (Civ. Ct. 2005) ("In order to establish standing in a No-Fault claim, plaintiff health care providers must

is devoid of any facts even remotely suggesting the existence of a valid assignment of contractual rights from any enrollee to Plaintiffs.

Additionally, as noted, Plaintiffs' Complaint allegations ignore the fact that MAOs have very specific responsibilities in this context. For example, MAOs are not authorized to make conditional payments to providers or suppliers where a no-fault insurer has paid or can reasonably be expected to make payment. 42 U.S.C. § 1395y(b)(2)(A)(ii). In addition, 42 C.F.R. § 422.108(b) provides MAOs must: "(1) Identify payers that are primary to Medicare under section 1862(b) of the Act and part 411 of this chapter; (2) Identify the amounts payable by those payers; and (3) Coordinate its benefits to Medicare enrollees with the benefits of the primary payers, including reporting, on an ongoing basis, information obtained related to requirements in paragraphs (b)(1) and (b)(2) of this section in accordance with CMS instructions." Yet, Plaintiffs' Complaint fails to allege any facts whatsoever showing that Plaintiffs fulfilled any of these obligations -- particularly coordinating benefits with the allegedly violated insurance contracts.

## III. PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW BASED ON LACK OF DEMONSTRATION OF DEFENDANTS' RESPONSIBILITY TO PAY.

The two causes of action Plaintiffs assert are based on the MSP Act and its implementing regulations. Both counts therefore require pleading of a legitimate basis for Defendants' payment responsibility. The two underlying legal presumptions in Plaintiffs' Complaint, which they use to attempt to avoid their need to demonstrate responsibility -- that the payment of bills by an MAO and the failure of a primary payer to exhaust administrative remedies constitute conclusive proof

---

produce 'properly executed' assignments of insurance benefits, signed by the patient naming the provider as assignee. . . . The only section of the assignment that is completed is the signature of

that payment for the bills is owed -- are both wrong as a matter of law. Therefore, Plaintiffs are not excused from sufficiently demonstrating Defendants' responsibility to pay for the subject medical charges, which they simply have not done.

With regard to demonstrated responsibility, the Medicare Act (codified as 42 U.S.C. §§ 1395 – 1395kkk-1) was amended when Congress created the MSP Act. The intent behind the MSP Act was to make Medicare insurance secondary to any primary plan that has an obligation to pay for a Medicare recipient's medical expenses. 42 U.S.C. § 1395y(b)(2)(A). As such, if Medicare were to make a "conditional" (primary) payment on behalf of a Medicare recipient, the primary plan may be required to reimburse the government via the Medicare Trust Fund. 42 U.S.C. § 1395y(b)(2)(B)(ii). The Act provides a "primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service *if it is demonstrated that such primary plan has or had a responsibility to make payment* with respect to such item or service." 42 U.S.C.A. § 1395y(2)(B)(ii) (emphasis added). The duty to reimburse, then, arises only if it is demonstrated that the primary plan had responsibility to make payment.[3]

Initially, in an attempt to plead demonstrated responsibility, Plaintiff's Complaint is fundamentally premised on two legal conclusions which are incorrect as a matter of law. Plaintiffs first erroneously allege that once an MAO makes a payment for medical items and services on behalf of its enrollees, the payment is conclusive proof that the items and services

---

the alleged assignor. Conspicuously absent is the name of the party receiving the assignment, who in the future would have standing to bring an action.").

[3] *See also Graham v. Farm Bureau Ins. Co.,* No. 1:07CV241, 2007 WL 891895, *2 (W.D. Mich. Mar. 21, 2007); *United States v. Stricker*, No. CV 09-BE-2423-E, 2010 WL 6599489, *9 (N.D. Ala. Sept. 30, 2010), *aff'd*, 524 F. App'x 500 (11th Cir. 2013).

were reasonable and necessary (which therefore demonstrates that Defendants would be obligated to pay for such items and services under their no-fault/Med Pay insurance policies). (Compl., ¶ 31.)

Plaintiffs' legal conclusion on this point is directly contrary to the Eleventh Circuit's *MSP Recovery* holding, discussed further *infra*, that plaintiffs must plead and prove that the defendants' insurance contracts actually render them responsible for primary payment of the subject expenses. *MSP Recovery v. Allstate Insurance Co.*, 835 F.3d 1351, 1361 (11th Cir. 2016). If the mere allegation of a conditional payment by a purported secondary payer were "conclusive proof" that the items and services were covered under a no-fault insurer's policy, the Eleventh Circuit would not have held, as it did, that plaintiffs asserting primary payer responsibility must still plead and prove that the defendants' insurance contracts in fact provided coverage for the subject expenses.

Moreover, Plaintiffs' "conclusive proof" assertion is refuted by Court of Appeals and district court decisions holding that mere payment by Medicare does *not* trigger any obligation of a primary insurer to pay beyond what its policy or state law requires -- *e.g.*, for unreasonable, unnecessary and unrelated medical expenses. For example, in *Caldera v. Ins. Co. of the State of Pa.,* 716 F.3d 861, 864 (5th Cir. 2013), the court considered whether the MSP Act obviated the state worker's compensation rule requiring workers' compensation claimants to obtain preauthorization from the relevant carrier before incurring certain medical expenses.[4] The court noted under the "MSP neither state law nor a private insurance contract may . . . reduce an insured's payments by the amount of his eligibility for Medicare benefits," but that the "MSP and

---

[4] Workers' compensation insurers are subject to the same types of primary payer provisions as PIP insurers. *See, e.g., Caldera*, 716 F.3d at 863.

its implementing regulations do not . . . extend so far as to eviscerate all state-law limitations on payment, as Caldera suggests." *Id.*

The court stated "[n]o matter what theory is pursued -- statutory right or subrogation -- the government stands exactly in [the Medicare beneficiary's] shoes when recovering from the available insurance funds." *Id.* at 865 (citation and internal quotation omitted). In addition, the court noted that "an MSP claimant may not recover amounts from a purported 'primary plan' in excess of a carrier's responsibility under state law or the relevant contract." *Id.* (citations omitted).

Indeed, the *Caldera* Court expressly rejected the argument that because Medicare made a conditional payment, Medicare necessarily determined the beneficiary's payments were medically necessary and, therefore, preempted any consideration or challenge by the workers' compensation carrier of medical necessity:

> Caldera makes the narrower argument that Medicare's conditional payment for his surgeries -- which equates to a determination that his surgeries were medically necessary -- renders the state-law preauthorization requirement "moot" because preauthorization likewise depends on a showing of medical necessity. In Caldera's view, Medicare's conclusion that Caldera's surgeries were medically necessary preempts any independent consideration of medical necessity by ICSP [Insurance Company of the State of Pennsylvania] or, on administrative appeal, the DWC [Division of Workers' Compensation]. Because he has fulfilled the other state-law requirements for recovery (*i.e.,* he has obtained an Agreed Judgment regarding compensability), Caldera says ICSP must pay.

716 F.3d at 865-66 (footnotes omitted). Rejecting this argument, the court held:

> Similar as it may be, Medicare's medical necessity determination is subject to statutory provisions, regulatory standards, internal guidance, and precedent distinct from that which governs a preauthorization analysis under Texas workers' compensation law. As a general matter, the MSP leaves those distinctions intact. *See* 42 C.F.R. § 411.40–.47. To

> impose Medicare's individualized medical necessity determination on a state workers' compensation plan is to unravel this delicate balance.

*Id.* at 866.

Similarly, *California Ins. Guarantee Ass'n v. Burwell,* No. 215CV01113ODWFFMX, 2017 WL 58821 (C.D. Cal. Jan. 5, 2017), held that workers' compensation insurers' obligations under the MSP Act to reimburse CMS for benefits paid to their insureds was limited to medical treatments covered by the insurers' policies, even when the provider lumped covered and uncovered treatments into single charge containing multiple diagnosis codes. The court reasoned that nothing in the MSP Act indicated insurers were required to reimburse CMS for more than what they were otherwise responsible for paying. The court explained:

> Under the MSP, "a primary plan . . . shall reimburse [Medicare] for any payment made . . . with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii). The critical phrase --"item or service" -- is defined by regulation, which reads in relevant part: "Any item, device, medical supply or service provided to a patient (i) which is listed in an itemized claim for program payment or a request for payment. . . ." 42 C.F.R. § 1003.101. Defendants appear to argue that the term "an item or service" refers to whatever (and however many) medical treatment(s) a provider lumps into a single charge, and that CIGA has a "responsibility to make payment with respect to such item or service" if the provider lists one or more diagnosis code(s) that are covered by the CIGA-administered policy. Defendants are wrong on both counts.

*Id.,* \*7. The court further stated it was "unconvinced that CIGA has a 'responsibility to make payment' for a treatment not covered by its policy just because that treatment is lumped together with other covered treatments on a line-item charge." *Id.,* \*8 ("Defendants do not point to anything in the MSP showing that CIGA must reimburse CMS for more than what CIGA is otherwise 'responsible' for paying.").

The same analysis applies here. Just as a Medicare conditional payment (and medical necessity determination) does not obviate any independent consideration or challenge of medical necessity by a workers' compensation carrier, a conditional payment by an MAO/Medicare would not preempt any independent consideration or challenge of reasonableness, medical necessity or relatedness by a no-fault carrier. As a result, such reasonableness, necessity and relatedness must be alleged by a plaintiff attempting to assert the causes of action at issue here, but no such allegations exist in Plaintiffs' Complaint. Indeed, it should be noted that even Plaintiffs do not claim their erroneous legal conclusion applies to relatedness of the treatment to the subject automobile accident, as opposed to merely reasonableness and necessity of the treatment. But Plaintiffs' Complaint also alleges nothing at all as to the relatedness of any treatment for which payment is challenged to any particular automobile accident.

Second, Plaintiffs conclusorily allege Defendants failed to administratively appeal the MAOs' right to reimbursement and therefore are time-barred from challenging the propriety of the amounts paid. (Compl., ¶ 33.) Again, such a naked legal conclusion is not admitted, and again it is wrong.

Nothing in the statute or regulations supports Plaintiffs' legal conclusion on this point. In fact, CMS recently enacted a regulation allowing for appeals by certain applicable plans, including no-fault insurers, in connection with reimbursement demands by Medicare where Medicare pays secondary to those plans, but specifically declined to extend that appeal process in connection with MAO reimbursement claims. *See* "Medicare Program; Right of Appeal for Medicare Secondary Payer Determinations Relating to Liability Insurance (Including Self-Insurance), No-Fault Insurance, and Workers' Compensation Laws and Plans," 80 Fed. Reg. 10611, 10616 (Feb. 27, 2015) (describing final rule implementing regulations, 42 C.F.R. §

405.900, et seq., effective April 28, 2015, providing an appeal process for certain applicable plans when Medicare pursues an MSP recovery claim directly from such plans, but expressly declining to apply the rule to Medicare Part C organizations (*i.e.,* the very MAOs that Plaintiffs purport to represent, *see* Complaint, ¶¶ 13, 53); stating there had been requests that "the proposed rule be revised to include appeal rights for applicable plans when a Medicare Part C organization or Part D plan pursues an MSP based recovery from the applicable plan," and responding that this "request is outside of the scope of this rule. The SMART Act provision for applicable plan appeals amended only the MSP provisions for Medicare Part A and Part B . . . of the Act."). This rule plainly negates Plaintiffs' assertion that primary plan insurers are required to exhaust any sort of appeal process in connection with reimbursement claims by the MAOs which are the subject of Plaintiffs' Complaint.

Moreover, the cases addressing this issue simply do not support this conclusion as to primary payers such as Defendants. *See, e.g., Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1240 (11th Cir. 2016); *Collins v. Wellcare Healthcare Plans, Inc.*, 73 F. Supp. 3d 653 (E.D. La. 2014); *Einhorn v. CarePlus Health Plans, Inc.*, 43 F. Supp. 3d 1329 (S.D. Fla. 2014); *Cupp v. Johns, et al.,* No. 2:14-cv-02016, 2014 WL 916489 (W.D. Ark. March 10, 2014); and *Potts v. Rawlings Co.*, 897 F. Supp. 2d 185 (S.D.N.Y. 2012). These cases all dealt with exhaustion of administrative remedies by Medicare beneficiaries themselves, *not* primary payers. There are no cases applying an exhaustion requirement to primary payers in these circumstances.

In *MSP Recovery*, the Eleventh Circuit recently clarified the meaning of the MSP Act's demonstrated responsibility requirement. The Court stated a "contractual obligation may serve as sufficient demonstration of responsibility for payment to satisfy the condition precedent to suit under the MSP Act." *MSP Recovery*, 835 F.3d at 1361. Plaintiffs have referred in their

Complaint to responsibility being demonstrated by the existence of a contractual obligation. (Compl., ¶ 65.) As applicable here, however, the *MSP* Court emphasized: "This *does **not** relieve Plaintiffs of their burden to allege in their complaints, and then subsequently prove with evidence, that Defendants' valid insurance contracts actually render Defendants responsible for primary payment of the expenses Plaintiffs seek to recover.* And Defendants may still assert any valid contract defense in arguing against their liability. We hold only that a contractual obligation may satisfy the demonstrated responsibility requirement, not that the existence of a contractual obligation conclusively demonstrates liability under the MSP Act's private cause of action." *MSP Recovery,* 835 F.3d at 1361 (emphasis added). In other words, while a contractual obligation, as opposed to a judgment or settlement, might serve as a sufficient demonstration of responsibility, Plaintiffs must still plead and prove that the Defendants' insurance contracts actually render them responsible for primary payment of the subject expenses. *See also MSP Recovery, LLC v. Allstate Ins. Co.,* No. 15-20788-CIV, 2015 WL 5882122, *2 (S.D. Fla. Oct. 6, 2015) (dismissing a second amended complaint in that case, substantively identical to that here, as not meeting the demonstrated responsibility requirement, holding that, as here, the complaint included "nothing more than . . . conclusory statements that the medical bills it paid were reasonable, necessary and related to the accident.").

Here, Plaintiffs' Complaint is devoid of any non-conclusory allegations demonstrating Defendants' responsibility to pay anything. The Complaint merely conclusorily alleges that unnamed "Class Members advanced Medicare payments on behalf of their enrollees for medical treatment and supplies for which Defendants were responsible as primary payers." (Compl., ¶ 58.) Yet, as the courts in the above cases have all correctly recognized, to obtain reimbursement under the MSP Act Plaintiffs would have to plead and ultimately show Defendants were in fact

14

required to pay the medical charges at issue and that these charges were covered in the first instance under the applicable insurance policy issued by Defendants.

There are many reasons Defendants may have no responsibility to pay, most notably because the subject charges were not reasonable, necessary or related to the subject automobile accident.[5] Plaintiffs do not even attempt to allege that the bills at issue were reasonable charges for necessary services or related to the subject automobile accidents. Instead, Plaintiffs rely on their two erroneous legal presumptions discussed above. Yet, as demonstrated above, neither the payment of bills nor the failure of the primary payer to exhaust administrative remedies relieves the MAO of its obligation to plead and prove that the bills at issue were reasonable, necessary and related to the automobile accidents at issue. Accordingly, it is not enough to merely baldly allege, as Plaintiffs have done, that Defendants are no fault or Med Pay insurers and therefore they must pay. Unless and until Plaintiffs allege facts showing Defendants actually had an obligation to pay the particular disputed bills, which they simply have not done here, they cannot assert a valid claim.

## CONCLUSION

For all the foregoing reasons, Defendants, Allstate Insurance Company and Esurance Property and Casualty Insurance Company, respectfully request this Court to enter an order dismissing this action in its entirety, with prejudice and without leave to amend.

Dated: April 20, 2017                          Respectfully submitted,

                                               By: /s/ Steven M. Levy
                                                     Jeffrey P. Lennard

---

[5] *See, e.g., Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.,* No. 08-12831, 2009 WL 2168628, *3 (E.D. Mich. July 17, 2009); *Allstate Ins. Co. v. Smith,* 902 P.2d 1386, 1388 (Colo. 1995); *State Farm Mut. Auto. Ins. Co. v. State Dep't of Nat. Res. & Envtl. Control*, No. CIV.A. N09C-10244JRJ, 2011 WL 2178676, *2 (Del. Super. Ct. May 31, 2011).

Steven M. Levy
Mark L. Hanover
DENTONS US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606
Phone: (312) 876-8000
Fax: (312) 876-7934

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2017 I caused a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** to be electronically filed with the Court in accordance with electronic filing procedures and served upon all counsel of record via the CM/ECF system.

/s/Steven M. Levy
Steven M. Levy