IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAO-MSO RECOVERY II, LLC, a Delaware entity; MSP RECOVERY, LLC, a Florida entity; MSPA CLAIMS 1, LLC, a Florida entity, | Case No. 17-cv-01340 |
| Plaintiffs, | |
| vs. | |
| ALLSTATE INSURANCE COMPANY, an Illinois Corporation, ESURANCE PROPERTY AND CASUALTY INSURANCE COMPANY, a Wisconsin Corporation, | |
| Defendants. _____/ | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF RECENT DECISION**

Plaintiffs' supplemental authority citation of *United States v. Wanaque Convalescent Ctr.*, No. 14cv6651 (D.N.J. Sept. 18, 2017), is puzzling, as that case supports Defendants' position on dismissal, not Plaintiffs'. In *Wanaque*, a False Claims Act case, the complaint survived dismissal only because, as even a cursory reading of the complaint in *Wanaque* shows, the allegations in that case, unlike in Plaintiff's operative Complaint here, were in fact extremely detailed. (A copy of the *Wanaque* First Amended Complaint is attached hereto as Exhibit A.) Most notably, unlike here, the *Wanaque* complaint gave specific factual information about each of its eight exemplar claims. For example, for just one of the patients, the *Wanaque* complaint alleged the following:

> 76. Minor A was a resident of New York.
>
> 77. The Wanaque admission sheet for Minor A lists Medicaid as the primary payer and contains only her Medicaid number. Moreover, no other insurance information is listed on the sheet.
>
> 78. Minor A came under the care of Dr. John Doe, whose staff contacted the Minor's parents to ascertain whether there was private health insurance.

> Her parent advised Dr. John Doe that Minor A was covered under an employer-based plan administered by Oxford Health Plans.
>
> 79. Dr. John Doe submitted his claims to Oxford.
>
> 80. The Oxford case manager advised Dr. John Doe that Minor A's providers, including Wanaque, were being paid by New York Medicaid.
>
> 81. Dr. John Doe then contacted Jeffreys Barrett (hereinafter "Barrett"), an administrator employed by Defendants, to inform him of the private coverage and Oxford's response. Barrett confirmed that Defendants were billing New York Medicaid for the services rendered at Wanaque to Minor A.
>
> 82. Barrett advised Dr. John Doe to bill Medicaid. Barrett even wrote a letter to the New York State Department of Health stating that Dr. John Doe's "specialized services should be billed through the New York Medicaid system."
>
> 83. Dr. John Doe did not bill New York Medicaid. Instead, he contacted the medical director at Oxford who authorized Dr. John Doe to receive payment as an out-of-network provider.

(*Wanaque* Complaint, ¶¶ 76-83.) The allegations regarding the other seven patients were just as factually specific, setting forth details regarding the patient's admission to the facility, insurance, billing and provider communications related thereto. (*Wanaque* Complaint, ¶¶ 84-134.) And the only reason the names of the patients were missing was because, unlike here, the patients were minors.

The Court can easily compare the detailed factual allegations in the *Wanaque* complaint regarding eight exemplars with the lack of any such allegations in this case with respect to even one exemplar. So, *Wanaque* does not help Plaintiffs at all, and instead shows that they would have to allege much more than they did, for far more than one exemplar, to survive dismissal here.

In all events, even had *Wanaque* actually supported Plaintiffs' position, which it does not, *Wanaque* is a False Claims Act case, and to the extent the district court's decision there could be

construed as suggesting a plaintiff need not include detailed allegations in its complaint, it is inconsistent with the Second Circuit's False Claims Act decision in *United States ex rel. Takemoto v. Nationwide Mut. Ins.,* 674 F. App'x 92, 95 (2d Cir. 2017), dismissing the complaint because it failed to allege sufficient facts regarding the patients at issue. *Id.* ("nowhere does the complaint identify any beneficiaries for whom the Center for Medicare and Medicaid Services ('CMS') made conditional payments, the amounts or dates of such payments, an associated settlement, and the relation of any conditional payments to any particular defendant. In the absence of such facts admitting a reasonable inference that CMS made a conditional payment on behalf of a particular defendant's beneficiary, there is no basis for a secondary inference that a given defendant was under a reimbursement obligation to CMS."). This Second Circuit law is, we submit, a far more authoritative precedent than *Wanaque*.

Dated: September 25, 2017               Respectfully submitted,

                                        By: /s/Steven M. Levy
                                            Jeffrey P. Lennard
                                            Steven M. Levy
                                            Mark L. Hanover
                                            DENTONS US LLP
                                            233 South Wacker Drive
                                            Suite 5900
                                            Chicago, IL 60606
                                            Phone: (312) 876-8000
                                            Fax: (312) 876-7934

                                            *Attorneys for Defendants*

3

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2017 I caused a true and correct a copy of the foregoing to be electronically filed with the Court in accordance with electronic filing procedures and served upon all counsel of record via the CM/ECF system.

/s/Steven M. Levy
Steven M. Levy
