## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MSPA CLAIMS 1, LLC, a Florida entity, | |
| Plaintiff, | |
| | Case No. 1:17-cv-01340 |
| v. | Hon. Andrea R. Wood |
| ALLSTATE INSURANCE COMPANY, an Illinois Corporation, | |
| Defendant. | |

### PLAINTIFF'S SECOND AMENDED CLASS COMPLAINT FOR DAMAGES

Plaintiff, MSPA Claims 1, LLC, a Florida entity (hereinafter referred to as "Plaintiff"), on behalf of itself and all others similarly situated, by and through the undersigned attorneys, brings this action against Allstate Insurance Company, an Illinois Corporation (hereinafter referred to as "Defendant"), and states as follows:

### NATURE OF THE ACTION

1.      This is a class action lawsuit under 42 U.S.C. § 1395y, otherwise known as the Medicare Secondary Payer Act ("MSP Law"), arising from Defendant's failure to fulfill its duties as a "no-fault" insurer of Medicare Advantage beneficiaries.

2.      Defendant has systematically and uniformly failed to pay — or to reimburse payments made by the Plaintiff and putative Class Members — on behalf of Part C Medicare beneficiaries ("Enrollees") for medical expenses resulting from injuries sustained in automobile accidents (the "accident-related medical expenses").

3.      The Enrollees are Medicare beneficiaries who were enrolled in Medicare

Advantage health plans offered or managed by Plaintiff's assignors and Class Members, which include Medicare Advantage Organizations ("MAOs"), together with first-tier and downstream entities, such as Management Service Organizations ("MSO"), Independent Physician Associations ("IPA"), and other full-risk providers (collectively "Medicare Payers"). Each type of Medicare Payer suffers an injury-in-fact from each instance of Defendant's failure to reimburse[1] the Medicare Payer, and accordingly has standing to sue under 42 U.S.C. § 1395y(b)(3)(A). *See* 42 U.S.C. § 1395w-21(a)(2)(A)(i) and 42 C.F.R. § 422.4(a)(1), defining Medicare Advantage plans.

4.     Plaintiff's assignors and the putative Class Members, all of which are Medicare Payers, provided Medicare benefits to the Enrollees.   In every instance, the Enrollees suffered injuries related to an accident and Plaintiff's assignors and the putative Class Members paid for medical items and/or services required by the Enrollees as a result of the accident.   Because the Enrollees were covered by no-fault policies issued by Defendant, Defendant is a primary payer under the MSP Law and must reimburse Plaintiff and the putative Class Members for the costs of the accident-related expenses.

5.     The MSP Law, at § 1395y(b)(3), provides a private right of action to any private entity or individual to enforce the MSP Law and remedy a primary payer's failure to reimburse conditional payments made by original Medicare or a Medicare Payer.   As described in detail below, Plaintiff's assignors and the putative Class Members have each suffered an injury-in-fact

---

[1] In the context of this action, involving no-fault coverage, Defendant injured the Plaintiff by neither paying, in the first instance, nor later reimbursing the payments made by Plaintiff's assignors. In an attempt to be clear and succinct, allegations herein describing a lack of reimbursement should be read to incorporate the underlying principle that the Defendant could have discharged its duty under the MSP Law by either primary payment or prompt reimbursement.

as a result of Defendant's failure to meet its statutory payment and reimbursement obligations.

6.     On behalf of itself and the Class, Plaintiff seeks, *inter alia*, double damages under the MSP Law for Defendant's failure to properly reimburse conditional payments for Enrollees' accident-related medical expenses within the applicable limitations period. This lawsuit, like others, advances the interests of the MSP Act and Medicare, because when Medicare Payers recover conditional payments they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia*, 685 F.3d 353, 365 (3d Cir. 2012).

## PLAINTIFF'S EXEMPLAR CLAIMS

7.     Plaintiff sets forth herein two examples of Defendant's failure to fulfill its statutory duties as a "no-fault" insurer. In each of these examples, Plaintiff describes Defendant's failure to reimburse conditional payments and how that failure caused an injury-in-fact to the respective Medicare Payer, which subsequently assigned its recovery rights to Plaintiff.

### The F.A. Claim.

8.     On July 25, 2014, F.A.[2] was enrolled in a Medicare Advantage plan issued and administered by Interamerican Medical Center Group, LLC ("IMC"). IMC is an MSO.

9.     On July 25, 2014, F.A. was injured in an accident in Florida. At the time of the accident, F.A. was also insured under a no-fault policy issued by Defendant. As a direct result of the accident, F.A. sustained injuries which include but are not limited to the following:

   a.   912 – Abrasion to shoulder and arm,

---

[2] In order to protect the Enrollee's privacy, and to ensure that this document is compliant with laws and regulations under HIPAA, the name of the Medicare enrollees shall only be referred to by their initials.

     b.  829.0 – Closed Fracture of unspecified bone,

     c.  401.9 – Unspecified essential hypertension,

     d.  780.79 - Other malaise and fatigue.

A list of the diagnosis codes and injuries assigned to F.A. in connection with F.A.'s accident-related treatment is attached hereto as **Exhibit A**.[3]

     10.    As a direct and proximate result of the accident and the injuries detailed above, F.A. required medical items and services.  Those medical items and services include but are not limited to:

     a.  A0429 Basic Life Support - Emergency,

     b.  73030  X-ray exam of the shoulder,

     c.  70450  CT of the head/brain without dye,

     d.  71020  Chest x-ray, 2 views,

     e.  99284  Emergency department visit.

An account of the items and services provided to F.A. as a result of the accident are included within **Exhibit A**.  The medical services were rendered between July 25, 2014 and April 14, 2015.

     11.    The medical providers subsequently issued bills for payment of the accident-related medical expenses to F.A.'s MSO, IMC, a full risk Medicare Payer for F.A.'s medical expenses and services. IMC paid $4,966.19 for F.A.'s accident-related medical expenses. While Plaintiff alleges the amount paid solely for purposes of completeness, the medical provider actually billed and charged IMC $14,131.00 for F.A.'s accident-related medical

---

[3] Exhibit A is a compilation of IMC's claims data for this exemplar incident involving F.A. The claims data from these exemplars utilizes industry-standard diagnosis and procedure codes.

expenses. The amount of damages recoverable under an MSP Act claim is what a Medicare Payer was charged, not what it ultimately paid. *See* 42 C.F.R. § 411.31.

12. Upon information and belief, F.A.'s no-fault coverage limit with Defendant for personal injury medical payments was $10,000. Although IMC incurred charges above the policy limit issued to F.A., Plaintiff is only seeking base damages up to the policy limit for medical expenses incurred by F.A. Defendant is liable to pay this amount because it was F.A.'s primary payer by virtue of a no-fault insurance policy that it issued to F.A.

13. Defendant reported its responsibility as a Responsible Reporting Entity ("RRE") to CMS,[4] including information about F.A.'s accident, the name of the reporting entity, and the type of insurance offered. This reporting demonstrates that Defendant was, or should have been, aware of its responsibility to reimburse IMC. A true and correct summary of the data that Defendant reported to CMS is attached hereto as **Exhibit B**.[5]

14. Plaintiff has the legal right to pursue this MSP Act claim pursuant to a series of valid assignment agreements.

15. Specifically, on December 16, 2014, IMC irrevocably assigned all rights to recover conditional payments made on behalf of its enrollees to MSP Recovery, LLC, ("MSP Recovery"). The assignment from IMC to MSP Recovery ("IMC Assignment") is attached

---

[4] Plaintiff has also identified at least 7,087 instances where Defendant has reported its primary payer status for accidents involving Plaintiff's assignors' Enrollees. Plaintiff attaches a list of such instances. *See* **Exhibit C**, *Defendant's MSP Reporting* data.

[5] Plaintiff obtained this reporting data from a vendor called MyAbility. MyAbility is one of 16 CMS-authorized vendors that allow companies, such as Plaintiff, to access data that primary payers report to CMS, in compliance with their statutory reporting obligations. To be clear, the reporting data attached to this complaint is taken directly from the data that CMS stores, which is input by the Defendant, not the Plaintiff. Accordingly, any inaccuracies or lack of specificity in the reporting data is attributable to the Defendant.

hereto as Exhibit D, and expressly provides:

> [b]y way of this agreement, [IMC] appoints, directs, and otherwise irrevocably *assigns* all of [IMC's] rights as it pertains to the rights pursuant to any plan, State or Federal statute(s) whatsoever directly and/or indirectly for any its members and/or plan participants

Ex. D, § 1.1.

16.    The agreement authorized MSP Recovery to assign the agreement to subsequent entities, so long as that assignment was approved. **Exhibit D**, § 1.2. MSP Recovery assigned the agreement to Plaintiff. **Exhibit E**, *MSP Recovery-Plaintiff Assignment*. IMC accepted, acknowledged, approved, and consented to any subsequent assignment from MSP Recovery to any then-existing or future MSP Company, which includes Plaintiff.

17.    Accordingly, Plaintiff is entitled to collect double damages against Defendant for its failure to reimburse IMC's conditional payment for F.A.'s accident-related expenses.

### *The N.M. Claim*

18.    On December 7, 2013, N.M. was enrolled in a Medicare Advantage plan issued and administered by Florida Health Care Plus ("FHCP"). FHCP is an MAO.

19.    On December 7, 2013, N.M. was injured in an accident in Florida. At the time of the accident, N.M. was also insured under a no-fault policy issued by Defendant. As a direct result of the accident, N.M. sustained injuries which include but are not limited to the following:

    a.    847.0 - Sprain of neck,

    b.    723.1 - Cervicalgia,

    c.    E812.0 - Other motor vehicle traffic accident involving collision with motor vehicle injuring driver of motor vehicle other than motorcycle,

    d.    E849.5 - Street and highway accidents,

    e.   840.9 - Sprains and strains of unspecified site of shoulder and upper arm,

    f.   847.9 - Sprain of unspecified site of back,

    g.   959.2 - Shoulder and upper arm injury,

    h.   719.41 - Pain in joint, shoulder region, etc.

A list of the diagnosis codes and injuries assigned to N.M. in connection with N.M.'s accident-related treatment is attached hereto as **Exhibit F**.

20.     As a direct and proximate result of the accident and the injuries detailed above, N.M. required medical items and services. Those medical items and services include but are not limited to:

    a.   73030  X-ray exam of the shoulder,

    b.   71020  Chest x-ray, two views,

    c.   99283  Emergency department visit.

An account of the items and services provided to N.M as a result of the accident are included within **Exhibit F**. The medical services were rendered between December 8, 2013 and January 28, 2014.

21.     The medical provider subsequently issued a bill for payment of the accident-related medical expenses to N.M.'s MAO, FHCP, which was fully responsible for all medical expenses incurred by N.M. FHCP paid $455.91 for N.M.'s accident-related medical expenses. While Plaintiff alleges the amount paid solely for purposes of completeness, the medical provider actually billed and charged FHCP $2,783.20 for N.M.'s accident-related medical expenses.

22.     The amount of damages recoverable under an MSP Act claim is what a Medicare

Payer was charged, not what it ultimately paid. *See* 42 C.F.R. § 411.31. Accordingly, Plaintiff seeks double the amount of $2,783.20 as damages for this one particular claim.

23.     Defendant reported its responsibility as an RRE to CMS, including information about N.M.'s accident, the name of the reporting entity, and the type of insurance offered. This reporting demonstrates Defendant was aware of the accident and even assigned claim numbers to said accident. *See* **Exhibit G**.

24.     Additional details, data, and documents regarding the foregoing exemplar claims are, or should be, in Defendant's possession and will be located and assessed through the process of discovery. However, the allegations set forth herein plainly demonstrate that Plaintiff's assignor suffered damages as a direct result of Defendant's failure to reimburse conditional payments as required under the MSP law.

25.     Plaintiff has the legal right to pursue this MSP Act claim pursuant to a series of valid assignment agreements.

26.     Specifically, on April 15, 2014, FHCP irrevocably assigned all rights to recover conditional payments made on behalf of its enrollees to La Ley Recovery Systems, Inc., ("La Ley Recovery"). The assignment from FHCP to La Ley ("FHCP Assignment") is attached hereto as **Exhibit H**, and expressly provides:

> [b]y way of this agreement, [FHCP] appoints, directs, and otherwise ***assigns*** all of [FHCP's] rights as it pertains to the rights pursuant to any plan, State or Federal statute whatsoever directly and/or indirectly for any its members and/or plan participants.

Ex. C, § 1.1. (emphasis added).

27.     The agreement authorized La Ley Recovery to assign the agreement to subsequent entities, so long as that assignment was approved. **Exhibit H**, § 1.2. La Ley Recovery

assigned the agreement to Plaintiff, MSPA. **Exhibit I**, La Ley-Plaintiff Assignment. FHCP accepted, acknowledged, approved, and consented to any subsequent assignment from La Ley Recovery to any then-existing or future MSP Company, which includes Plaintiff, MSPA.

28.     La Ley Recovery's assignment to Plaintiff was subsequently approved by FHCP's receiver through a settlement agreement ("Settlement Agreement") between FHCP, Inc., MSP Recovery LLC, MSP Recovery Services, LLC, and MSPA Claims 1, LLC, La Ley Recovery Systems Inc., and La Ley Recovery Systems (collectively referred to as the "MSP Companies"). A copy of the Settlement Agreement is attached as **Exhibit J**. In the Settlement Agreement, FHCP's receiver acknowledged and agreed to the terms and conditions of the FHCP-La Ley Recovery Assignment Agreement. **Exhibit J**, Recitals, § 2(a).

29.     On June 14, 2016, the Leon County Circuit Court approved the terms of the Settlement Agreement, specifically finding "that the Settlement Agreement was negotiated in good faith and is in the best interest of Florida Healthcare Plus, Inc.," and retained jurisdiction to enforce the terms of the Settlement Agreement. **Exhibit K**, *In Re: The Receivership of Florida Healthcare Plus, Inc.*, Case No. 2014 CA 2762, slip op., (Fla. 2d Cir. Ct. June 14, 2016).

30.     Accordingly, Plaintiff is entitled to collect double damages against Defendant for its failure to reimburse FHCP's conditional payment for N.M.'s accident-related expenses.

## JURISDICTION AND VENUE

31.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question).

32.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d). At least one member of the class is a citizen of a different state than the Defendant and the

aggregate amount in controversy exceeds $5,000,000.00, exclusive of interests and costs.

33.    This Court has personal jurisdiction over the Defendant insofar as the Defendant is authorized and licensed to conduct business in Illinois, maintains and carries on systematic and continuous contacts in this judicial district, regularly transacts business within this judicial district, and regularly avails itself of the benefits in this judicial district.

34.    Venue is proper before this Court pursuant to 28 U.S.C. § 1391.

35.    All conditions precedent to this action have occurred, been performed, or have been waived..

## BACKGROUND

36.    The MSP Law declares that Medicare or a Medicare Payer are "secondary payers" to all other sources of coverage, and, consequently, Medicare Payers who are injured as a result are empowered to recoup from the rightful primary payer if Medicare or a Medicare Payer pays for a service that fell within overlapping insurance coverage for a Medicare Part C beneficiary.

37.    Defendant is a primary plan under § 1395y(b)(2)(A) because it is a no-fault auto insurer. See 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include a group health plan or large group health plan…a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no-fault insurance); 42 C.F.R. § 411.21 (same).

### Medicare Advantage Organizations

38.    The Medicare Advantage program, otherwise known as Part C, was enacted in 1997.  Under the Medicare Advantage program, a private insurance company, operating as an MAO, administers the provision of Medicare benefits pursuant to a contract with the Centers for

Medicare and Medicaid Services ("CMS").

39.     CMS pays the MAO a fixed fee per enrollee and the MAO provides, at minimum, the same benefits as an enrollee would receive under traditional Medicare. MAO's are a private sector analog to traditional Medicare, and have the same rights to reimbursement from primary payers, like Defendant here.

**First-Tier and Downstream Entities**

40.     In addition to MAOs, first-tier and downstream entities suffer damages (and thus an injury-in-fact) when a primary plan fails to make a payment or reimburse pursuant to the MSP laws. First-tier and downstream entities include Management Service Organizations ("MSOs"), Independent Physician Associations ("IPAs"), and other at-risk providers, all of whom have standing to bring suit under 42 U.S.C. § 1395y(b)(3)(A).

41.     The types of Medicare Advantage organizations protected by the MSP Law is provided by statute, which provides that an Medicare Advantage organization include those "plans offered by provider-sponsored organizations (as defined in section 1395w-25(d) of this title)[.]" 42 U.S.C. § 1395w-21(a)(2)(A)(i). And, a "'provider-sponsored organization" under Section 1395w-25(d) is any established provider or group of affiliated providers that provide Medicare Part C benefits and take on the risks associated with providing that care. See 42 U.S.C. § 1395w-25(d)(1)(A–C).

42.     This definition of an Medicare Advantage organization is similarly incorporated in the regulations, which state that "[a]n MA plan may be a coordinated care plan" and that "[a] coordinated care plan is a plan that includes a network of providers that are under contract or arrangement with the organization to deliver the benefit package approved by CMS." 42 C.F.R. §

422.4(a)(1). Thus, Medicare Advantage organizations, by definition, include the network of providers under contract to deliver Medicare Part C benefits. The statute considers them MA plans regardless of whether they are "downstream" or "first tier" entities.

43.     So, by definition, MSOs and IPAs that provide Medicare Part C benefits and share in the financial risks associated with that provision qualify as MA plans under the statute and regulations.

44.     MSOs often enter into a written arrangement—acceptable to CMS—with an MAO to provide health care services for Medicare beneficiaries enrolled under the MAO's Medicare Advantage plan.  Just as CMS provides the MAO with a fixed fee per enrollee, typically the MAO agrees to provide the MSO with a fixed fee per beneficiary assigned to that MSO.

45.     Under these arrangements, the MSO is usually fully at risk, that is to say that it is responsible for all medical care and services required by the Medicare beneficiary.[6]  To meet its obligations, an MSO can either provide medical services directly to enrollees (i.e., through its own medical centers) or by otherwise paying providers for items and services provided to enrollees.

46.     Any time a Medicare beneficiary assigned to an MSO receives medical treatment, the MSO pays for that treatment.  If those treatments are covered by an overlapping no-fault insurance policy and the no-fault insurer reimburses the medical expenses incurred, that

---

[6]     For example, in a full-risk agreement, Medicare Payers receive a capitated fee for the care of a patient per month.  If the costs for the provision of care of that patient fall below the capitated fee, then the Medicare Payer keeps the difference between the capitated rate and what was actually paid out.  If the costs of care exceed the capitated fee, then the at-risk Medicare Payer is fully responsible.  That is why they are called "at-risk", because they suffer an actual injury in fact when they pay more for patient care than what they receive in the capitated fee.

reimbursement directly remedies the MSO's injury.

47.     The same is true for Independent Physician Associations ("IPAs").  IPAs typically enter into contractual arrangements with MAOs or MSOs. Under these arrangements, IPAs take on the full risk for a Medicare beneficiary's medical care.  Any time a Medicare beneficiary assigned to an IPA receives medical treatment, the IPA pays for that treatment.  If a no-fault insurer has primary payer responsibility and reimburses medical expenses paid by the IPA, that reimbursement directly remedies the IPA's injury.

**Reasonable and Necessary Payments**

48.     Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which … are not reasonable and necessary for the diagnosis or treatment of illness or injury." Therefore, once a Medicare Payer makes a payment for medical items and services on behalf of an Enrollee, the payment is conclusive proof that the items and services were reasonable and necessary.

49.     The items and services received by the exemplar Enrollees, described above, were reasonable and necessary to treat the injuries suffered by the Medicare beneficiary.

50.     All purported conditions precedent to the filing of this lawsuit have occurred, been performed, or have been otherwise waived by Defendant.

**THE PARTIES**

51.     MSPA Claims 1, LLC is a Florida entity, with its principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155. MSPA is a citizen of the State of Florida and is not a citizen of the state of the Defendant. Numerous entities have assigned their recovery rights to assert the causes of action alleged in this Complaint to Plaintiff

MSPA Claims 1, LLC. As part of those assignments, MSPA Claims 1, LLC is empowered to recover reimbursement of Medicare payments made by the MAOs, First-Tier and Downstream Entities that should have been reimbursed by Defendant upon entering into settlements with Medicare enrollees.

52. Defendant Allstate Insurance Company is an Illinois corporation with its principal place of business located at 2775 Sanders Rd., Northbrook, Illinois 60062. Upon information and belief, Defendant operates through multiple subsidiary entities in its overall role as a primary payer for the purposes of this action.

53. Complete diversity exists between the parties.

**CLASS DEFINITION**

54. The putative class (members of which are referred to as "Class Members" herein) is defined as:

> All Medicare Advantage Organizations, First Tier Entities, Downstream Entities or their assignees ("MA Plan"), that provide benefits under Medicare Part C in the United States of America and its territories and that made payments for a Medicare beneficiary's medical expenses, where Defendant:
> (1) is the primary payer by virtue of having a contractual obligation to pay for the items and services that are required to be covered by the policy of insurance of the same Medicare Beneficiaries that are also covered by an MA plan; and
> (2) failed to pay for the items and services or otherwise failed to reimburse the MA Plan or its assignees for the medical items and services related to the claims on behalf of the Medicare Beneficiaries.
> This class definition excludes (a) Defendant, its officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

**CLASS ACTION ALLEGATIONS**

55. This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all Class Members or their assignees who paid for their beneficiaries'

medical expenses, when Defendant should have made those payments as primary payer and should have reimbursed the Class Members.

56.     As discussed in this class action Complaint, Defendant has failed to provide primary payment and/or appropriately reimburse the Class Members for money it was statutorily required to pay under the MSP Law.  This failure to reimburse applies to Plaintiff, as the rightful assignee of those organizations that assigned their recovery rights to Plaintiff, and to all putative Class Members.  Class action law has long recognized that, when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm.  This case, thus, is well suited for class-wide resolution.

57.     Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendant to make such payments.  The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers. Defendant's failure to reimburse Plaintiff and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

58.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy shown as follows:

      a. **<u>Numerosity</u>**:   Joinder of all members is impracticable. Upon information and belief, there are hundreds of MAOs and first tier entities (including its assignees) throughout the United States who were not reimbursed by Defendant under a policy which provided PIP or Med Pay coverage for medical expenses arising out

of accidents. Thus, the numerosity element for class certification is met.

b. **Commonality**: Questions of law and fact are common to all members of the Class. Specifically, Defendant's misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare Part C. Defendant failed to make reimbursement payments, report settlements or their ongoing responsibility for medicals (ORM) involving clients who were Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course. Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendant failed to comport with its statutory duty to pay or reimburse the assignors pursuant to the MSP Law. Each Class Member shares the same needed remedy, *i.e.*, reimbursement. Plaintiff seeks to enforce its own rights, as well as the reimbursement rights of the putative Class Members, for medical payments made on behalf of their Medicare Part C beneficiaries, as a result of Defendant's practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

c. **Typicality**: Plaintiff's claims are typical of the Class Members' claims, as all have been damaged in the same manner. Plaintiff's and the Class Members' claims have the same essential characteristics, arise from the same course of conduct, and share the same legal theory. As the putative class representative, Plaintiff possesses the same interests and suffered the same injury as the other Class Members, which demonstrates a legally sufficient nexus between Plaintiff's

claims and the Class Members' claims. Plaintiff's claims are typical of the Class Members' claims because Defendant failed to make primary payments for Enrollees' accident-related medical expenses, which it was obligated to do by its contractual obligations with Enrollees. Plaintiff's claims are typical because Plaintiff, like the Class Members, has a right to relief for Defendant's failure to make primary payments, or reimburse Plaintiff and Class Members for conditional payments of the Enrollees' accident-related medical expenses. Plaintiff's and the Class Members' claims are based on the same statutes, regulations, legal theories and factual situations. Defendant's business practices, acts and omissions are materially the same with respect to Plaintiff's and the Class Members' claims, as will be Defendant's legal defenses. Plaintiff's claims are, therefore, typical of the Class.

d. **Adequacy**:  Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff's interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiff and the putative Class Members.  In addition, Plaintiff is represented by counsel who are competent and experienced in class action litigation and also have no conflicts. In fact, two courts have already concluded that Plaintiff's counsel is "willing and able to take an active role as class representative and advocate on behalf of all class members." *E.g., MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017); *MSPA Claims 1, LLC v. IDS Property Cas. Ins. Co.*, Case No. 2015-27940 CA-01 (Fla. 11th Cir. Ct. 2017).

e. **Ascertainability**: Locating members of the Class would be relatively simple, since CMS maintains records of all MAOs, first tier entities, and downstream entities, and providing notice to such entities would could be accomplished by direct communication.

59. The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class ("Damages Class"). Defendant, whether deliberately or not, failed to make required payments under the MSP provisions and failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiff, thus depriving Plaintiff, as assignee of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

60. It is the custom and practice of the CMS and primary plans to maintain records in a detailed electronic format. Based on these practices, Plaintiff maintains a reasonable methodology for generalized proof of Class-wide impact, using a software system (the "MSP System") designed and developed by Plaintiff and its counsel. The MSP System captures, compiles, synthesizes and analyzes large amounts of data in order to identify claims for reimbursement of conditional payments. This case will not present manageability problems as compared to non-electronic data driven class actions. There is no need for a fact-specific individual analysis of intent or causation, and damages will be calculated based upon the total fee-for-service amounts associated with the payments made on behalf of Enrollees. Plaintiff is capable of using the MSP System to identify and quantify Class Members' claims, as it has done

for its own claims. Two other courts have recognized the MSP System as a viable method to prove damages in substantially similar cases wherein the plaintiff, like in this case, asserted an MSP private cause of action breach of contract causes of action. *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017); *MSPA Claims 1, LLC v. IDS Property Cas. Ins. Co.*, Case No. 2015-27940 CA-01 (Fla. 11th Cir. Ct. 2017).

61.     Proceeding with a damages class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated assignors to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

62.     Administering the proposed Damages Class will be relatively simple. Defendant provided no-fault policies with claimants who are also Medicare beneficiaries. Once that data identifying these policies is compiled and organized, Plaintiff can determine which of the policy holders were Medicare beneficiaries during the applicable time. Then, using the database, Plaintiff and the Class Members can identify those payments made for medical treatment where the Defendants were (1) the primary payers and (2) for which reimbursement was not made. Indeed, two Florida state classes were recently certified in *MSPA Claims 1, LLC v. Ocean*

*Harbor Cas. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017) and *MSPA Claims 1, LLC v. IDS Property Cas. Ins. Co.*, Case No. 15-27940-CA-21 (Fla. 11th Cir. Ct. 2017) using the same methodology.

## CAUSES OF ACTION

63.    Plaintiff's claims result from Defendant's failure to pay or reimburse Medicare payments which are secondary, as a matter of law, and must be reimbursed if a primary payer is available.  Defendant issues no-fault insurance policies and is thus a primary payer liable under the MSP Law.

## COUNT I
## Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)

64.    Plaintiff incorporates by reference paragraphs 1-63 of this Complaint.

65.    Plaintiff asserts a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of themselves and all similarly-situated parties.

66.    The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) damages. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016).

67.    Defendant's no-fault policy is a primary plan, which rendered Defendant the primary payer for accident-related medical expenses.

68.    As part of providing Medicare benefits to Medicare beneficiaries enrolled under the Medicare Advantage program, the Class Members and Plaintiff's assignors paid for items and services which were also covered by no-fault insurance policies issued by Defendant.

69.    More specifically, Plaintiff's and the Class Members' Medicare beneficiaries

were also covered by no-fault, PIP, or medical payments policies issued by the Defendant.

70.     Because the Defendant is the primary payer, the Medicare payments for which Plaintiff seeks reimbursement were conditional payments under the MSP Law.

71.     Defendant was required to timely reimburse the assignors for its conditional payments of the Enrollees' accident-related medical expenses. *See* 42 U.S.C. § 1395y(b)(2)(ii); 42 C.F.R. § 411.22(b)(3); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016). Defendant failed to do so.

72.     Plaintiff and the Class Members have suffered money damages as a direct result of Defendant's failure to reimburse the accident-related medical expenses.

73.     Defendant has derived substantial profits by placing the burden of financing medical treatments for their policyholders upon the shoulders of Plaintiff's assignors and the Class members.

74.     In this case, Defendant failed to administratively appeal the assignors' right to reimbursement within the administrative remedies period on a class wide basis. Defendant, therefore, is time-barred from challenging the propriety or amounts paid.

75.     Plaintiff, for itself and on behalf of the Class, brings this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Defendant for its failure to make appropriate and timely reimbursement of conditional payments for the Enrollees' accident-related medical expenses.

**COUNT II**
**Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract**

76.     Plaintiff incorporates by reference paragraphs 1-63 of this Complaint.

77.     The assignors are subrogated the right to recover primary payment from

Defendant for the Defendant's breach of contract with their insured, pursuant to the MSP provisions. Specifically, Defendant was contractually obligated to pay for medical expenses and items arising out of an accident, and Defendant failed to meet that obligation. This obligation was, instead, fulfilled by Plaintiff and other Class Members. Under the MSP provisions, Plaintiff is permitted to subrogate the enrollee/insured's right of action against the Defendant. *See* 42 C.F.R. § 411.26.

78.     Plaintiff complied with any conditions precedent to the institution of this action, to the extent applicable.

79.     Defendant failed and/or refused to make complete payments of the Enrollees' accident-related expenses as required by its contractual obligations.

80.     Defendant failed to pay each enrollee's covered losses, and Defendant had no reasonable proof to establish that it was not responsible for the payment.

81.     Defendant's failure to pay the medical services and/or items damaged Plaintiff and the Class Members as set forth herein. Plaintiff and the Class Members processed medical expenses and are entitled to recover up to the statutory policy limits for each enrollee's medical expenses related to the subject accidents, pursuant to their agreements with CMS and the provider of services.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class Members described herein, pray for the following relief:

      a.  find that this action satisfies the prerequisites for maintenance of a class action

pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and certify the respective Class;

b. designate Plaintiff as representative for the respective Class and Plaintiff's undersigned counsel as Class Counsel for the respective Class; and

c. issue a judgment against Defendant that:

    i. grants Plaintiff and the Class Members a reimbursement of double damages for those moneys the Class is entitled to under 42 U.S.C. § 1395y(b)(3)(A);

    ii. grants Plaintiff and the Class Members a reimbursement of damages for those moneys the Class is entitled to pursuant to their direct right of recovery for breach of contract within Count II;

    iii. grants Plaintiff and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

    iv. grants Plaintiff and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated: April 20, 2018                   Respectfully submitted,

                                    *s/ David M. Hundley*
                                    David M. Hundley

                                    Christopher L. Coffin
                                    David M. Hundley
                                    Courtney L. Stidham
                                    PENDLEY, BAUDIN & COFFIN, LLP
                                    1515 Poydras Street, Suite 1400
                                    New Orleans, LA 70112
                                    Phone: (504) 355-0086
                                    ccoffin@pbclawfirm.com
                                    dhundley@pbclawfirm.com
                                    cstidham@pbclawfirm.com

                                    Michael L. Baum
                                    R. Brent Wisner
                                    Pedram Esfandiary
                                    BAUM, HEDLUND, ARISTEI & GOLDMAN P.C.
                                    12100 Wilshire Blvd., Suite 950
                                    Los Angeles, CA 90025

Tel: (310) 207-3233
mbaum@baumhedlundlaw.com
rbwisner@baumhedlundlaw.com
pesfandiary@baumhedlundlaw.com

***Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

**I CERTIFY** that a true and correct copy of this motion was electronically filed with the Clerk of the Court *via* CM/ECF on this 20th day of April 2018. Thereby, a copy of the foregoing will be served upon all persons and entities registered and authorized to receive such service through CM/ECF.

*/s/* David M. Hundley