IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MSPA CLAIMS 1, LLC, a Florida entity,        Case No. 17-cv-01340

    Plaintiff,

vs.

ALLSTATE INSURANCE COMPANY, an Illinois
Corporation,

    Defendant.

_____

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT</u>**

To survive a Rule 12(b)(6) motion to dismiss, a complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation omitted). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

## I. PLAINTIFF'S "ASSIGNMENT" ALLEGATIONS ARE DEFICIENT.

Initially, under various states' laws, including Illinois, in order to receive funds arguably due another, the plaintiff must have some form of assignment vesting such a right in that plaintiff.[1] In its Dismissal Order (Dkt #62 at 9), this Court held "[w]hile Plaintiffs claim that the MAOs have subrogation rights pursuant to Medicare regulations to pursue their Medicare beneficiaries' breach of contract claims against Defendants, the complaint still fails to plead facts sufficient to establish that the MAOs then properly assigned those rights to Plaintiffs." Plaintiff's amended "assignment" allegations are still deficient.

Plaintiff attaches as Exhibit D to its latest Complaint a December 16, 2014 "MSP Recovery LLC Recovery Agreement" between "MSP Recovery, LLC" and Interamerican Medical Center Group ("IMC") (referred to as the "Client"). (Compl., ¶ 15.) According to Plaintiff, IMC administered the Medicare Advantage ("MA") Plan in which one of Plaintiff's

---

[1] *See, e.g., Clarin Corp. v. Massachusetts Gen. Life Ins. Co.*, 44 F.3d 471, 476 (7th Cir. 1994); *NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, 979 F. Supp. 2d 513, 523 (D.N.J. 2013); *Inter Impex S.A.E. v. Comtrade Corp.*, No. 00 CIV. 0133(GBD), 2004 WL 2793213, *3 (S.D.N.Y. Dec. 6, 2004); *Hartford Ins. Co. of Se. v. St. Mary's Hosp., Inc.*, 771 So. 2d 1210, 1212 (Fla. 4th DCA 2000); *Parkway Ins. Co. v. New Jersey Neck & Back*, 330 N.J. Super. 172, 186, 748 A.2d 1221, 1229 (Law. Div. 1998), *as revised* (Oct. 14, 1998).

"representative" enrollees, "F.A.," was enrolled, and paid for medical expenses incurred by F.A. which Defendant supposedly was required to pay. (*Id.,* ¶¶ 8, 14-17.) MSP Recovery is to pay to the Client 50 percent of the proceeds of any recovery on a "contingency fee basis." *Id.* p. 3. The agreement is effective only for two years, with an automatic renewal after two years, unless terminated, with each party having termination rights, and any assignment of the agreement must be approved by the Client. *Id.* p. 6. Neither the purported initial assignment from the Client, nor Exhibit E to the Complaint, which purports to be an assignment from MSP Recovery to Plaintiff, refers to any particular Medicare beneficiary involved with Defendant. The assignments related to Plaintiff's other representative beneficiary, "N.M.," are similar. Plaintiff attaches as Exhibit H an April 15, 2014 "La Ley Recovery Systems Agreement" between La Ley Recovery and FHCP (referred to in the agreement as the "Client"). According to Plaintiff, FHCP administered the MA Plan in which Plaintiff's other "representative" enrollee, "N.M.," was enrolled, and paid for medical expenses incurred by N.M. which Defendant supposedly was required to pay. (Compl., ¶¶ 18, 21-25.) MSP Recovery is to pay to the Client 50 percent of the proceeds of any recovery on a "contingency fee basis." *Id.* p. 3. The agreement is effective only for one year, with an automatic renewal after one year, unless terminated, with each party having termination rights, and any assignment of the agreement must be approved by the Client. *Id.* p. 2. Neither the supposed initial assignment from the Client, nor Exhibit I to the Complaint, which Plaintiff purports to be an assignment from La Ley Recovery to Plaintiff, refers to any particular Medicare beneficiary involved with Defendant.

The initial purported "assignments" from the "Clients" are not true assignments at all. An assignment has to be a transfer of all the interests and rights to the thing assigned.[2] Thus, a plaintiff does not plead a valid assignment unless it alleges "a completed transfer of the . . . entire interest in any claim[.]" *Cortlandt Street Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 418 (2d Cir. 2015) (quotation omitted). By contrast, contingency fee arrangements, in which a party agrees to split recovery with a second party who will pursue the recovery, do not give the second party independent standing to pursue the claim.[3] Notwithstanding Plaintiff's legal conclusions here, the initial "assignments" from the Clients are contingency fee arrangements -- not true assignments.

And, as noted, there is no reference at all to assignment of any particular claim, let alone claims pertaining to the representative beneficiaries, so Plaintiff's "assignment" allegations and exhibits do not cure the problem with the lack of allegations regarding what in particular was allegedly assigned or what rights the alleged assignor even had to assign. *See also MAO-MSO Recovery II, LLC, et al. v. Nationwide Mut. Ins. Co.*, Nos. 17-cv-263, 17-cv-164 (S.D. Ohio Feb. 28, 2018) (Opinion attached as Exhibit A), at 7-9 (dismissing another substantively similar MAO lawsuit; stating "Plaintiff has offered only bare allegations without any specific reference to the "who, what, where, when, how or why," and without this additional information, the FACs are inadequate," and that dismissal was well supported based on "the decisions of several other

---

[2] *See, e.g., A.J. Maggio Co. v. Willis*, 738 N.E.2d 592, 596 (Ill. 2000), *app. dism'd*, 197 Ill. 2d 397 (2001); *Jeffrey D. Richardson, Tr. v. Pana Limestone Quarry Co.; Jeffrey D. Richardson, Tr.*, 356 B.R. 190, 196-97 (Bankr. C.D. Ill. 2007); *Panopoulos v. Lexington Ins. Co.*, No. 8:13-CV-700-T-33TGW, 2013 WL 2708688, *5 (M.D. Fla. June 12, 2013).

[3] *See, e.g., Hand v. Bibeault*, 400 Fed. App'x 526, 528 (11th Cir. 2010); *Malibu Media, LLC v. Zumbo*, No. 13–cv–729, 2014 WL 2742830, *5 (M.D. Fla. June 17, 2014).

courts that have already dismissed similar complaints.") (citing numerous other cases so holding).[4]

The purported assignment related to "F.A." fails for an additional reason. The assignor is alleged to be an "MSO," not an MAO, beneficiary or direct healthcare provider. Judge Seitz recently dismissed two substantively identical lawsuits by this Plaintiff group for this very reason. In *MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*, No. 17-cv-23749, 2018 WL 1547600, \*6 (S.D. Fla. Mar. 9, 2018), Judge Seitz held "because Plaintiff has failed to allege Hygea is either an MAO or a direct healthcare provider to R.C. for this claim, Hygea has no standing to bring a claim under § 1395y(B)(3)(A)". (footnote omitted). In *MSP Recovery Claims, Series LLC v. Auto-Owners Ins. Co.*, No. 17cv23841-PAS (S.D. Fla. Apr. 24, 2018) (Opinion attached as Exhibit B), Judge Seitz dismissed the case with prejudice, holding that one of the alleged original assignors was not an MAO based on the CMS website listing of MAOs. *Id.* at 9. The same is true of Plaintiff's alleged original assignor related to the "F.A." claim. Indeed, like the purported MAO in *Auto-Owners,* that entity, IMC, is not on the government list of MAOs. *See* MA Plan Directory, Centers for Medicare & Medicaid Services, *https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/MCRAdvPartDEnrolData/MA-Plan-Directory.html.*

---

[4] *Accord MAO-MSO Recovery II, LLC, et al. v. American Family Mut. Ins. Co.*, No. 17-cv-00175, 2018 WL 835160, \*1, 6 (W.D. Wis. Feb. 12, 2018) (W.D. Wis. Feb. 12, 2018) (dismissing substantively similar lawsuit brought by Plaintiff's counsel; stating the "court agrees with the growing number of courts that have already dismissed similar complaints for plaintiffs' failure to show that they have standing to sue," and the "concerns raised by defendants about the existence and scope of plaintiffs' assignments are more than theoretical. For all of these reasons, plaintiffs must come forward with more than a bare assertion that they possess the right to sue in these cases."); *MAO-MSO Recovery II, LLC v. USAA Cas. Insurance Co.*, No. 17-20946-CIV, 2018 WL 295527, \*3 (S.D. Fla. Jan. 3, 2018) (same principle).

The purported assignment related to "N.M." fails for yet another reason. As indicated in Plaintiff's Complaint (¶ 27-28), the alleged original assignor for this claim, FHCP, was placed in receivership. Plaintiff's Complaint allegations gloss over the fact that the receiver expressly rejected the FHCP assignment, declaring it "void ab initio." For example, in *MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, 212 F. Supp. 3d 1250, 1256 (S.D. Fla. 2016), *app. dismissed*, No. 17-11273-JJ, 2017 WL 4386453 (11th Cir. Sept. 19, 2017), yet another similar lawsuit which involved the same purported assignor, the court stated, "the Court agrees with every other court in this district to have addressed the matter and finds that Plaintiff lacks standing to assert FHCP's claims because it has not been validly assigned the right to do so." In so ruling, the court explained:

> After noting that the attempted assignments were made "without notifying or obtaining approval from FHCP, the Receiver, or the Receivership Court," (D.E. 25–2 at 4 ¶ 12), DFS explained its position that *"[t]he La Ley Agreement* does not comply with CMS regulations governing subcontractor agreements, specifically, 42 C.F.R. § 422.108," and "fails to include any of the CMS required provisions when an HMO like FHCP engages the services of a downstream service provider. Thus, ***it is void ab initio***[,]" (D.E. 25–2 at 5 ¶ 16).

*Id.* at 1257 ("In light of the above, it is clear that the receiver repudiated the La Ley Agreement, and any assignment from La Ley to Plaintiff was ineffective (citations omitted, emphasis added). Since the original La Ley Agreement was void from the outset, it cannot confer standing here.

## II. PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW BASED ON LACK OF DEMONSTRATION OF DEFENDANT'S RESPONSIBILITY TO PAY.

Additionally, both of Plaintiff's causes of action still require pleading of a legitimate basis for Defendant's payment responsibility.[5] In its Dismissal Order (at pp. 10-11), this Court

---

[5] The MSP Act provides a "primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under

- 5 -

stated that while the complaints alleged "Defendants are primary payers under the statute, they fail to plead any facts satisfying the remaining requirement regarding 'a claim covered by Medicare,'" and that this required "pleading of some factual matter to make the claim plausible—for example, that a particular individual received Medicare benefits through a particular MAO, that the individual also held a no-fault auto insurance policy with a particular Defendant, and that the individual was injured in an auto accident at a particular time and place and as a result received medical services covered by Medicare." In addition, this Court explained that Plaintiffs alleged no facts "for example, that the individual received medical services covered by Medicare, that a particular Defendant failed to pay for the medical services, that a particular MAO made conditional payment for the services under the statute, and that the MAO was not reimbursed by the particular Defendant that was a primary payer under the statute." (*Id.* at 11.)

Here, Plaintiff's Complaint is still devoid of any non-conclusory allegations demonstrating Defendant's responsibility to pay anything. For example, even though the latest Complaint now includes additional purported facts regarding the representative claims, including a purported lump sum allegedly charged to and paid by two of Plaintiff's alleged assignors, Plaintiff still fails to allege what specific payments were conditionally paid by a secondary payer, covered by Medicare, and for which Defendant failed to pay as a supposed primary payer. So, Plaintiff's amended allegations do not cure the pleading flaws identified by this Court. Plaintiff

---

this subchapter with respect to an item or service *if it is demonstrated that such primary plan has or had a responsibility to make payment* with respect to such item or service." 42 U.S.C.A. § 1395y(2)(B)(ii) (emphasis added). The duty to reimburse, then, arises only if it is demonstrated that the primary plan had responsibility to make payment. *See also Graham v. Farm Bureau Ins. Co.*, No. 1:07CV241, 2007 WL 891895, *2 (W.D. Mich. Mar. 21, 2007); *United States v.*

also still fails to allege what exactly the payments were for, what exactly was supposedly covered and not paid by Defendant, or what coverage determinations were made by Defendant. Indeed, Plaintiff concedes it has failed to allege such facts, because it states in the Complaint that such specifics will be located and assessed through discovery. (Compl., ¶ 24.) Plaintiff's concession regarding the lack of factual allegations in its Complaint only underscores the inadequacy of Plaintiff's latest pleading effort.

As the *American Family* court stated, in language equally applicable here:

> *Plaintiffs' allegations related to the merits suffer from the same problems as their allegations about standing.* Plaintiffs have not plausibly alleged that defendants were the primary payer of a particular medical expense, that defendants failed to a pay a particular medical expense that they were required to pay, that a particular MAO paid a particular claim, or that a particular beneficiary was a member of a particular MAO. Plaintiffs' allegations are so conclusory that defendants would have no way of determining whether they failed to make payments required by the Medicare Care Act or whether plaintiffs are entitled to recover any required payments that defendants failed to make. *The complaints read as if plaintiffs began with a conclusion that defendants owed them money and simply worked backwards to construct a legal theory that would support the conclusion. Even under the liberal pleading standard of Rule 8, more is required.*

2018 WL 835160, *6 (emphasis added).

*MSPA Claims I, LLC v. Tenet Florida, Inc.*, No. 17-20039-CIV-WILLIAMS (S.D. Fla. Mar. 29, 2018) (Opinion attached as Exhibit C), also provides guidance. The court in *Tenet,* in dismissing another lawsuit brought by this Plaintiff group, stated, again in language equally applicable here, that an MSP private cause of action may be brought only "**in the case of a primary plan which fails to provide for primary payment** (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)," and that "any action brought under this subsection

---

*Stricker*, No. CV 09-BE-2423-E, 2010 WL 6599489, *9 (N.D. Ala. Sept. 30, 2010), *aff'd*, 524 F. App'x 500 (11th Cir. 2013).

of the MSPA must be predicated upon nonpayment by a primary payer." *Tenet* at p. 10 (emphasis Court's). This holding underscores that Plaintiff must allege specific facts regarding the circumstances and amounts the Defendant has supposedly failed to pay, which Plaintiff still has not done.

The Complaint merely conclusorily alleges that unnamed class members paid Medicare payments on behalf of their enrollees who were also covered by Defendant, which supposedly made Defendant the primary payer for the medical expenses paid by Plaintiff and the putative class members. (*See, e.g.,* Compl., pp. 2-4.) Yet, as the above authorities show, to obtain reimbursement under the MSP Act Plaintiff would have to plead and ultimately show Defendant was in fact required to pay the medical charges at issue, and that these charges were covered in the first instance under the applicable insurance policy issued by Defendant. Absent facts demonstrating Defendant failed to pay for medical bills as to which it was in fact responsible for paying, Plaintiff has not established any injury as a result of Defendant's alleged conduct. *See, e.g., Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (a plaintiff must have suffered an injury in fact – "an invasion of a legally protected interest" which is (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical.") (citation omitted); *MAO-MSO Recovery II, LLC, et al. v. State Farm Mut. Auto. Ins. Co.*, No. 17cv01541, 2018 WL 340021, *3 (C.D. Ill. Jan. 9, 2018) (in another substantively similar lawsuit brought by Plaintiff's counsel, Judge McDade stated the "Court agrees that Plaintiffs have failed to sufficiently allege injury in fact because Plaintiffs do not allege particular and concrete injuries on behalf of R.F. or the representative MAO.").

There are many reasons Defendant may have no responsibility to pay, most notably because the subject charges were not reasonable, necessary or related to the relevant automobile

accident.[6] Yet, as the above decisions show, it is not enough to merely parrot the words "reasonable, necessary and related." Unless and until Plaintiff alleges facts showing Defendant actually had an obligation to pay the particular disputed bills, which it simply has not done, Plaintiff cannot assert a valid claim.

Plaintiff attempts to avoid this fatal problem by asserting two pure legal conclusions that are wrong as a matter of law; namely, (1) an MAO's payment is conclusive proof that the items and services were reasonable and necessary; and (2) Defendant is time-barred from challenging the propriety of the amounts paid by an MAO because it did not administratively appeal the MAOs' right to reimbursement. Of course, as this Court recognized, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. (Dkt #62 at 6.)

First, Plaintiff erroneously alleges that once an MAO makes a payment for medical items and services on behalf of its enrollees, the payment is conclusive proof that the items and services were reasonable and necessary (which therefore demonstrates that Defendant would be obligated to pay for such items and services). (Compl., ¶ 48.) However, this legal conclusion is directly contrary to the authorities holding that MSP Act plaintiffs must plead and prove that defendants' insurance contracts actually render them responsible for primary payment of the subject expenses.

For example, in *MSP Recovery v. Allstate Insurance Co.*, 835 F.3d 1351, 1361 (11th Cir. 2016), the Eleventh Circuit held that:

---

[6] *See, e.g., Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*, No. 08-12831, 2009 WL 2168628, *3 (E.D. Mich. July 17, 2009); *Allstate Ins. Co. v. Smith*, 902 P.2d 1386, 1388 (Colo. 1995); *State Farm Mut. Auto. Ins. Co. v. State Dep't of Nat. Res. & Envtl. Control*, No. CIV.A. N09C-10244JRJ, 2011 WL 2178676, *2 (Del. Super. Ct. May 31, 2011).

> [A] contractual obligation may serve as sufficient demonstration of responsibility for payment to satisfy the condition precedent to suit under the MSP Act. This does not relieve Plaintiffs of their burden to allege in their complaints, and then subsequently prove with evidence, that Defendants' valid insurance contracts actually render Defendants responsible for primary payment of the expenses Plaintiffs seek to recover.

If the mere allegation of a conditional payment by a purported secondary payer were "conclusive proof" that a defendant insurer was responsible for paying the items and services at issue, the Eleventh Circuit could not have held, as it did, that plaintiffs asserting primary payer responsibility must still plead and prove that the defendants' insurance contracts in fact provided coverage for the subject expenses.

In addition, Plaintiff's "conclusive proof" allegation is refuted by federal Court of Appeals and district court decisions holding that, even if Medicare has made a payment, a primary insurer is not required to pay beyond what its policy or state law requires (*e.g.*, for unrelated, unreasonable or unnecessary medical expenses). In *Caldera v. Ins. Co. of the State of Pa.*, 716 F.3d 861, 864 (5th Cir. 2013), the court considered whether the MSP Act obviated the state worker's compensation rule requiring workers' compensation claimants to obtain preauthorization from the relevant carrier before incurring certain medical expenses. The *Caldera* Court expressly rejected the argument that because Medicare made a conditional payment Medicare necessarily determined the beneficiary's payments were medically necessary and, therefore, preempted any consideration or challenge by the workers' compensation carrier of medical necessity. *Id.* at 865-66.[7]

---

[7] *See also California Ins. Guarantee Ass'n v. Burwell*, 227 F. Supp. 3d 1101, 1113-14 (C.D. Cal. 2017) (reasoning that nothing in the MSP Act indicated insurers were required to reimburse CMS for more than what they were otherwise responsible for paying, stating it was "unconvinced that CIGA has a 'responsibility to make payment' for a treatment not covered by its policy just

- 10 -

The same analysis applies here. Just as a Medicare conditional payment does not obviate any independent consideration or challenge by the insurer of medical necessity by a workers' compensation carrier, a conditional payment by an MAO/Medicare would not preempt any independent consideration or challenge by the insurer as to relatedness of the treatment to the relevant accident, or the reasonableness or medical necessity of that treatment.

Second, in equally conclusory fashion, Plaintiff alleges Defendant failed to administratively appeal the MAOs' right to reimbursement and therefore is time-barred from challenging the propriety of the amounts paid. (Compl., ¶ 74.) Again, this legal conclusion is wholly unfounded. Nothing in the statute or regulations supports Plaintiff's legal conclusion on this point. In fact, CMS recently enacted a regulation allowing for appeals by certain applicable plans, including no-fault and liability insurers, in connection with reimbursement demands by Medicare where Medicare pays secondary to those plans, *but specifically declined to extend that appeal process to MAO reimbursement claims.*[8]

This rule plainly negates Plaintiff's assertion that primary plan insurers are required to exhaust any sort of appeal process in connection with reimbursement claims by the MAOs and related entities which are the subject of Plaintiff's Complaint in order to challenge reasonableness, necessity and relatedness. Indeed, the cases addressing this issue simply do not support Plaintiff's legal conclusion as to primary payers such as Defendant, since they all dealt

---

because that treatment is lumped together with other covered treatments on a line-item charge.");
*California Ins. Guarantee Ass'n v. Price,* 252 F. Supp. 3d 948, 956-57 (C.D. Cal. 2017) (same principle).
[8] *See* Medicare Program; Right of Appeal for Medicare Secondary Payer Determinations Relating to Liability Insurance (Including Self-Insurance), No-Fault Insurance, and Workers' Compensation Laws and Plans, 80 Fed. Reg. 10611, 10616 (Feb. 27, 2015).

only with the need for the Medicare beneficiaries themselves, not primary payers, to exhaust.[9] There are simply no cases applying an exhaustion requirement to primary payers in these circumstances.

### III. PLAINTIFF FAILS TO ALLEGE FACTS ESTABLISHING COMPLIANCE WITH CONDITIONS PRECEDENT.

Additionally, the MSP Act states that, as a secondary plan, an MAO should not pay unless the primary plan *cannot reasonably be expected to make* payment promptly or because the intermediary or carrier did not know that the other coverage existed. *See* 42 U.S.C. 1395y(b)(2)(A)(ii).[10] MAOs have no greater rights than Medicare. Yet, Medicare must meet numerous conditions before being able to collect from a primary payer.

In connection with automobile accidents, for instance, medical providers are required to identify and first bill no-fault insurer primary payers, and must have reason to believe payment will not be made promptly by primary payers before they can even bill a secondary payer.[11] In

---

[9] *See, e.g., Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229 (11th Cir. 2016); *Collins v. Wellcare Healthcare Plans, Inc.*, 73 F. Supp. 3d 653 (E.D. La. 2014); *Einhorn v. CarePlus Health Plans, Inc.*, 43 F. Supp. 3d 1329 (S.D. Fla. 2014); *Cupp v. Johns, et al.*, No. 2:14-cv-02016, 2014 WL 916489 (W.D. Ark. March 10, 2014); *Potts v. Rawlings Co.*, 897 F. Supp. 2d 185 (S.D.N.Y. 2012).

[10] ("Payment under this subchapter may not be made . . . with respect to any item or service to the extent that . . . payment has been made or can reasonably be expected to be made."); 42 U.S.C. 1395y(b)(2)(B)(i) ("Secretary may make payment under this subchapter with respect to an item or service if a primary plan . . . has not made or cannot reasonably be expected to make payment with respect to such item or service promptly."); 42 C.F.R. § 411.21 ("Conditional payment means a Medicare payment for services for which another payer is responsible, made either on the bases set forth in subparts C through H of this part, or because the intermediary or carrier did not know that the other coverage existed.").

[11] *See, e.g.*, CMS Medicare Secondary Payer Manual Publication 100-05, Ch. 3 at 30.2.1, https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/msp105c03.pdf. The MSP Manual states, in the questions it lists for providers to identify primary payers, that no-fault insurance is primary only for accident-related services and that liability insurance is primary only for those services related to a liability settlement, judgment or award. *Id.* Ch. 3, Sec. 20.2.1, Part II.

addition, 42 C.F.R. § 422.108(b) provides MAOs must: "(1) Identify payers that are primary to Medicare under section 1862(b) of the Act and part 411 of this chapter; (2) Identify the amounts payable by those payers; and (3) Coordinate its benefits to Medicare enrollees with the benefits of the primary payers, including reporting, on an ongoing basis, information obtained related to requirements in paragraphs (b)(1) and (b)(2) of this section in accordance with CMS instructions." And primary payers who have a demonstrated responsibility to make payment must do so as "directed in a recovery demand letter." 42 C.F.R. § 411.22(c)(2).

Yet, despite having been amended a second time, the Complaint is still devoid of facts as to any incident which could be tested regarding what efforts Plaintiff or its assignors made to identify primary payers; whether Plaintiff or its assignors were aware of a primary payer's existence at the time they supposedly processed the charges in question; whether and why payment was not reasonably expected to be made by Defendant prior to any payment by Plaintiff or its assignors; why Plaintiff or its alleged assignors were even required to make payment, or whether Plaintiff had any basis to conclude Defendant knew about the bills but could not reasonably be expected to make payment.

MAOs clearly need to satisfy these conditions precedent. Indeed, *Collins* specifically demonstrates this. The *Collins* court stated that when an "MAO is unaware of a primary payer, the MAO would not 'reasonably expect' a primary plan to provide payment. Here, *Wellcare sent multiple inquiries to Collins requesting information regarding other, potential sources of payment. Collins failed to respond to a single inquiry.* Accordingly, the fact that Wellcare did not know of the primary plan when it funded Collins' medical expenses does not undermine the fact that those payments constituted conditional payments." 73 F. Supp. 3d at 669, emphasis

added. So, *Collins* shows that the MAO needs to actually make efforts to identify primary payers, facts which, again, are absent from Plaintiff's Complaint allegations.

In addition, since, as the Complaint allegations indicate, Plaintiff or its assignors made conditional payments without first determining whether a primary payer existed that could have reasonably been expected to make payment, Plaintiff could have suffered no injury as the result of Defendant's alleged MSP Act violations. Yet, as discussed above, in order to recover under the MSP Act, which Plaintiff relies upon as the basis for its claims, a plaintiff must have suffered such an injury.

Even under *Humana*, heavily relied on by Plaintiff, Plaintiff would have to allege facts, which it has not done here, showing it complied with its MSP Act obligations. Indeed, the key holding of *Humana* was that MAOs may bring a private right of action precisely because MAOs "exercise the same rights to recover from a primary plan, entity or individual that [Medicare] exercises." 832 F.3d at 1236 (citation omitted). Of course, since they have rights only standing in the shoes of Medicare, MAOs must follow exactly the same requirements as Medicare. And that is why Plaintiff must, to state a valid MSP Act claim, allege it has complied with its MSPA Act obligations. This Plaintiff still has not done.

## IV. PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS FOR ADDITIONAL REASONS.

Count II, alleging breach of contract, fails under *Twombly* and *Iqbal* for additional reasons. Initially, as this Court noted in dismissing Plaintiff's prior Complaint, the "complaint contains such a dearth of factual allegations regarding the contracts between Defendants and their insureds that the Court does not even have a basis for analyzing the claim under any particular

state's substantive contract law." (Dkt # 62 at 14 (footnote omitted).) Plaintiff has not even tried to cure that pleading deficiency.

Moreover, wholly apart from the deficiencies in Plaintiff's Medicare allegations, the Complaint also still fails to allege any facts demonstrating an assignment of rights under any insurance policy issued by Defendant. Plaintiff alleges it is entitled, pursuant to a no-fault or Med Pay insurance policy supposedly covering enrollees insured by Plaintiff's MAO assignors, to recover insurance benefits from Defendant which Defendant allegedly failed to pay. (Compl., ¶ 4.) Plaintiff fails to allege, however, that any policyholder/insured assigned any rights to Plaintiff under any insurance policy issued by Defendant. Absent any allegation of a valid assignment of rights under such a policy, Plaintiff's "breach of contract" claim fails as a matter of law.[12]

## CONCLUSION

For all the foregoing reasons, Defendant, Allstate Insurance Company, respectfully requests this Court to enter an order dismissing this action in its entirety, with prejudice and without leave to amend.

Dated: May 3, 2018

Respectfully submitted,

By: /s/Steven M. Levy
    Steven M. Levy
    Richard L. Fenton
    Mark L. Hanover
    DENTONS US LLP
    233 South Wacker Drive
    Suite 5900
    Chicago, IL 60606

---

[12] *See, e.g., Clarin*, 44 F.3d at 476; *State Farm Mut. Auto. Ins. Co. v. Pressley*, 28 So. 3d 105, 108-09 (Fla. 1st DCA 2010) ("an entity other than a medical provider may recover PIP benefits for services provided by a provider, *but only pursuant to a valid assignment of benefits.* . . .") (emphasis added, citations omitted).

- 16 -

Phone: (312) 876-8000
Fax: (312) 876-7934

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2018 I caused a true and correct a copy of the foregoing to be electronically filed with the Court in accordance with electronic filing procedures and served upon all counsel of record via the CM/ECF system.

/s/ Steven M. Levy